699 So.2d 895 (1997)
Stephen SCHWARZ
v.
The ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, et al.
No. 97-CA-0222.
Court of Appeal of Louisiana, Fourth Circuit.
September 10, 1997.
*896 Gregory T. Juge, Metairie, for Plaintiff/Appellant Stephen Schwarz.
Julie D. Livaudais, G. Phillip Shuler, Richard B. Ramirez, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, for Defendant/Appellee The Administrators of the Tulane Educational Fund, D/B/A Tulane University.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
Stephen Schwarz appeals the grant of summary judgment by the trial court dismissing his claim for breach of employment contract against The Administrators of the Tulane Educational Fund, d/b/a Tulane University, arguing that genuine issues of material fact exist that preclude summary judgment. For the following reasons, we affirm.

FACTS:
Stephen Schwarz was hired by Tulane in 1986 as an assistant professor of engineering, a non-tenured position. His position was classified as a probationary regular appointment, a position with the prospect of tenure. As explained in the Tulane Faculty Handbook, appointments during the probationary period are made for periods of one year, with written notification of reappointment made annually. No later than April of the third year of a faculty member's service, each department is required to recommend to the dean and the college or division tenure committee whether the faculty member should be reappointed or terminated. The department is required to give reasons, supported by evidence, to show that the faculty member has or has not made satisfactory progress toward meeting the criteria for tenure. A similar review is conducted when a final tenure decision is required. The Handbook explains that tenure-track professors are eligible for tenure if they meet Tulane's expectations for tenured faculty.
In addition to the information provided in the Faculty Handbook, the School of Engineering publishes a Statement of Qualifications for Tenure and Promotion. This document covers, among other subjects, the department's expectations for faculty members in terms of professional attainment and growth. It provides that recommendations for tenure or promotion must include specific achievements in three categories: 1) teaching effectiveness; 2) scholarly and professional achievement; and, 3) university citizenship.
During Mr. Schwarz's third year review he was informed that he had a low number of publications, and advised that he should concentrate on improvement in that area. During his sixth year review the Mechanical Engineering Department, the School of Engineering Promotion and Tenure Committee, and the Dean of the School of Engineering all recommended that Mr. Schwarz be given tenure. Provost James Kilroy rejected the recommendations. Upon review of the recommendation, as provided for in the Faculty Handbook, he found that the low number of publications in peer-reviewed journals was an exceptional circumstance that justified overruling the recommendations.
Mr. Schwarz appealed the Provost's decision to the University-wide Senate Faculty Tenure, Freedom and Responsibility Committee. Following a hearing, the Committee determined that the Provost had not acted improperly in rejecting the recommendations, and that the Faculty Handbook procedures had been followed.
Mr. Schwarz subsequently filed the instant suit claiming that Tulane breached its contract of employment with him by denying him promotion and tenure. Tulane moved for summary judgment contending that there was no genuine issue of material fact as to the existence of a contract, an essential element of Mr. Schwarz's breach of contract claim. The trial court granted Tulane's motion and dismissed the claim. This appeal followed.

DISCUSSION:
Mr. Schwarz contends that summary judgment was improperly granted in this case because there exists a genuine issue of material fact as to the intent of the parties. He *897 argues that only where the parties agree what was intended and disagree as to the legal significance of those intentions is there a question of law disposable on summary judgment.
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730. The summary judgment article, La.Code Civ. Proc. art. 966, was amended by the Louisiana Legislature in 1997, effective July 1, 1997.[1] See 1997 La. Acts, No. 483. The amendment provides that the burden of proof on summary judgment remains with the mover. However, if, as here, the mover will not bear the burden of proof at trial, he only need point out to the court that there is an absence of factual support for one or more of the elements essential to the adverse party's claim. Once the mover establishes that there is no factual support for an essential element of the adverse party's claim, the burden shifts to the adverse party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If he fails to do so, the mover is entitled to summary judgment.
In support of its motion for summary judgment, Tulane argued that there was absolutely no factual support for Mr. Schwarz's claim that a contract that promised tenure to him existed.
Mr. Schwarz counters that a contract was formed by the parties' mutually agreeing to be bound by certain terms and conditions, which are described in the Faculty Handbook. In his deposition, he testified that the Faculty Handbook, the Statement of Qualifications for Tenure and Promotion, and letters of offer and acceptance of probationary position formed the contract between him and Tulane. He specifically stated that he was not relying on an oral agreement.
Mr. Schwarz claims that he joined the faculty in 1986 with the understanding that he would be given tenure after six years, if he lived up to his obligations, as they were described to him. He contends that when two parties enter into an agreement in which both view themselves as bound to act in a certain way, they have entered into a contract. While he acknowledges that the general rule in Louisiana is "employment at will", he argues that this rule can be overridden by the intent of the parties. Language in the Faculty Handbook gives assurances that tenure will be given unless the candidate does not meet the criteria; Mr. Schwarz argues that those assurances are, in fact, guarantees. He contends that Provost Kilroy conceded in his deposition that Tulane was bound to give tenure to a professor who, by all accounts, meets the applicable criteria.
Tulane contends that the Faculty Handbook and Statement of Qualifications for Tenure and Promotion are merely guidelines set out by Tulane with no input from Mr. Schwarz. These guidelines can be changed by Tulane at any time, and do not create a contract.
This court has recognized that a grievance procedure handbook is a unilateral expression of company policy, and that the publishing of that policy does not evidence a meeting of the minds. The terms of such a handbook were not bargained for by the *898 parties, and any benefits conferred by it are mere gratuities. Mix v. Univ. of New Orleans, 609 So.2d 958, 961 (La.App. 4 Cir. 1992), writ denied, 612 So.2d 83 (La.1993).[2]
Mr. Schwarz testified in his deposition:
Q. Now at any time during the discussions that you had when you came down to visit on the campus that summer, or in any conversations you had over the telephone with Tulane professors, was the subject of tenure discussed?
A. Mostly in the context of the Faculty Handbook. I was shown the Faculty Handbook and explained where I should find all the rules for how they'd grant tenure and how they promote people.
Q. So, are you saying that when the concept of tenure came up, you were referred to the handbook as a guideline for how and what to do?
A. Yes. And it was, actuallyI mean, really, as I recall, there was onlyI think only Harold really discussed that with me, discussed tenure at all with me, and it was showing me the Faculty Handbook.
Q. Did Harold or anybody else at Tulane ever guarantee you that you would receive tenure?
A. No.
Mr. Schwarz candidly acknowledged that the only discussion regarding tenure was in the context of the Faculty Handbook, which was described as the place to find the rules, procedures and considerations that governed tenure and promotion. He admitted that no one at Tulane ever promised that he would be given tenure.
In Schalow v. Loyola Univ., 94-0797 (La.App. 4th Cir. 11/30/94), 646 So.2d 502, the plaintiff, like Mr. Schwarz, argued that the doctrine of "at will" employment was modified by a contractual agreement between the parties. See Mix v. Univ. of New Orleans, supra. Although Schalow involved formal written contracts that were renewed annually, this court noted that "[a]ny ambiguity should be construed in favor of employment at will." Id. at p. 5, 505. "[T]he historical purpose of tenure, which originated in higher education, was the protection of academic freedom by preventing arbitrary or repressive dismissal." Id., citing Thorne v. Monroe City Sch. Bd., 542 So.2d 490, 492 (La.1989). However, the converse is also true: implicit in the status of non-tenured/probationary employee is the assumption that protection against arbitrary or repressive dismissal is absent, i.e., the doctrine of employment at will prevails. Schalow, supra at p. 6, p. 505.
Mr. Schwarz cites Gottlieb v. Tulane Univ., 529 So.2d 128 (La.App. 4 Cir.), writ denied, 532 So.2d 766 (La.1988) to support his argument that the intent of the parties is a genuine issue of material fact that precludes summary judgment in a case such as this. In that case Dr. Gottlieb, the plaintiff, claimed that the chancellor of Tulane had promised her tenure after a certain period of time; Tulane denied having made any such promise. The trial judge stated that the sole issue was "whether or not plaintiff was hired by Tulane with a promise of tenure." The jury answered interrogatories finding that a contract existed, but that Tulane had not breached the contract. This Court found that any promise made to Dr. Gottlieb was not reasonably relied upon, and therefore was not binding on Tulane.
Mr. Schwarz's reliance on Gottlieb is misplaced. Unlike Dr. Gottlieb, Mr. Schwarz does not claim that he was promised tenure. In fact, he has admitted that no one at Tulane ever made such a promise to him. Rather, he argues that he understood that the Faculty Handbook constituted such a promise because each party mutually agreed to be bound by the terms and conditions set forth therein. The only evidence in the record that supports Mr. Schwarz's claim that he and Tulane mutually agreed to be bound is his own affidavit, in which he states:

*899 11.
I came to Tulane in 1986 on the understanding that after six years, if I lived up to my obligations as they were described to me, then I would be given tenure. It was my understanding that Tulane was contractually bound to give me tenure it [sic] I met the appropriate criteria.
12.
I would not have given up six years of my professional career at Tulane if I believed that Tulane was free to deny me tenure for no valid reason.
13.
In my experience in academia, once a professor is denied tenure at one school, it is virtually impossible for him to get tenure at a comparable school. As such, a professor risks a great deal by attempting to gain tenure at one school rather than another.
Unfortunately for Mr. Schwarz, his understanding of Tulane's obligation to him with regard to his employment cannot support the legal conclusion that a contract promising tenure existed between him and Tulane. Because there is simply no proof that there was a contract between these parties, the trial court correctly found that Tulane was entitled to judgment in its favor as a matter of law.
AFFIRMED.
NOTES
[1] The 1997 amended version of La.Code Civ. Proc. art. 966 repealed subsections (F) and (G). Subsections (C) and (E) were amended as follows:

(C)(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
* * * * * *
(E) A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
[2] Citing State v. Motor, 220 Kan. 99, 551 P.2d 783 (1976). See also Keller v. Sisters of Charity, 597 So.2d 1113, 1115 (La.App. 2 Cir.1992)(finding that personnel manual provided general guidelines for disciplining employees, and contained no provision indicating an agreement between the parties); Wall v. Tulane Univ., 499 So.2d 375, 376 (La.App. 4 Cir. 1986) (finding handbook was merely informational in nature, and did not constitute a binding promise), writ denied, 500 So.2d 427 (La.1987).